*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of<br><br>DOMINIC N. | )<br>)   Supreme Court No. S-18282<br>)<br>)   Superior Court No. 3AN-21-02585 PR<br>)<br>)   O P I N I O N<br>)<br>)   No. 7696 – April 26, 2024<br>) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Claire De Witte, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Dominic N. Laura Fox, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Maassen, Chief Justice, and Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

CARNEY, Justice.

## I.      INTRODUCTION

A man appeals his involuntary civil commitment for mental health treatment. He argues that the State failed to prove that he was mentally ill as defined by statute and that his diagnoses were the type of intellectual and developmental disabilities excluded from the definition. Because there was clear and convincing

evidence that he suffered from mental illness that is more than his excluded disabilities, we affirm the superior court's order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Dominic N.[1] has been repeatedly charged with sexual abuse of a minor. He has been sent to the Alaska Psychiatric Institute (API) "numerous times" to attempt to regain competency to stand trial in the criminal cases, but each time has been deemed incompetent to stand trial. Dominic was also previously committed to API following a civil proceeding in 2015.

Dominic has been diagnosed with numerous mental health and behavioral conditions as a child and as an adult. These include childhood diagnoses of oppositional defiant disorder and attention-deficit/hyperactivity disorder, and adult diagnoses of major depressive disorder, selective mutism, other specified neurodevelopmental disorder associated with prenatal alcohol disorder, fetal alcohol spectrum disorder, and borderline intellectual functioning.

In 2020 Dominic was charged with sexual abuse of a minor. Following a 2021 court-ordered competency examination,[2] a forensic examiner determined he was not competent to stand trial. The superior court held a competency hearing and found him mentally incompetent. The court ordered his commitment to API for further evaluation and restoration in July 2021.[3] While at API for competency restoration, Dominic was diagnosed with an additional intellectual disability, alcohol and cannabis

---

[1]      We use a pseudonym to protect the appellant's privacy.

[2]      *See* AS 12.47.100(b) (authorizing court to "have the defendant examined by at least one qualified psychiatrist or psychologist, who shall report to the court concerning the competency of the defendant").

[3]      *See* AS 12.47.110(a) (providing that upon finding defendant incompetent to stand trial, court "shall commit a defendant charged with a felony . . . for further evaluation and treatment until the defendant is mentally competent to stand trial").

use disorders, and antisocial personality disorder, and provisionally diagnosed with an unspecified paraphilic disorder.[4]

## B. Proceedings

In November 2021 the State petitioned for an order authorizing Dominic's evaluation to determine whether he was mentally ill and as a result was likely to cause harm to others.[5] The superior court granted the petition. In addition to the allegations in the petition, the court relied on testimony from the petitioner, findings related to competency in Dominic's criminal case, and the presumption per AS 12.47.110(e)[6] that Dominic presented a likelihood of serious harm to self or others.

API staff filed a petition for 30-day civil commitment a few days later.[7] A superior court master conducted a hearing at which two witnesses testified on behalf of API: a psychologist and Dominic's treating psychiatrist. Each was qualified as an expert in their respective fields.

---

[4] Paraphilic disorders are a category of mental disorders involving sexual behaviors that "make[] the person a serious threat to the psychological and physical well-being of other individuals." *Paraphilic Disorders*, AMERICAN PSYCHIATRIC ASSOCIATION (2013), https://www.psychiatry.org/File%20Library/Psychiatrists/ Practice/DSM/APA_DSM-5-Paraphilic-Disorders.pdf.

[5] *See* AS 47.30.700(a)-(b) (outlining process for petitioning superior court for order authorizing hospitalization of individual for full evaluation of whether individual meets civil commitment criteria and addressing petition's requirements); AS 47.30.710 (requiring mental health professional to perform emergency examination within 24 hours of respondent's detention under AS 47.30.705 and to apply for ex parte order authorizing hospitalization for evaluation under AS 47.30.700 if one has not yet been obtained).

[6] AS 12.47.110(e) ("A defendant charged with a felony and found to be incompetent to proceed under this section is rebuttably presumed to be mentally ill and to present a likelihood of serious harm to self or others in proceedings under AS 47.30.700 – 47.30.915.").

[7] AS 47.30.730 (setting out procedure for health care professionals conducting mental health evaluation under AS 47.30.710 to file petition for 30-day commitment for treatment).

The psychologist testified that she conducted forensic evaluations of Dominic in September and November 2021. She testified that she had also considered the records from Dominic's previous competency evaluations and his previous and ongoing admissions to API. The psychologist diagnosed Dominic with other specified neurodevelopmental disorder potentially due to prenatal alcohol exposure, borderline intellectual functioning, and alcohol use disorder. She testified that Dominic was incompetent to stand trial because he "rationally didn't seem to understand" the judicial process or appreciate the severity of his charges.

Dominic's psychiatrist testified that he probably had more opportunity to observe and interact with Dominic than the psychologist. The psychiatrist agreed with the psychologist's diagnoses and testified that he would add diagnoses of "impulse control disorder separate from developmental delay" and pedophilic disorder. On cross-examination the psychiatrist testified that Dominic's impulse control disorder was not a developmental disability.

The master recommended that Dominic be committed to API for 30 days. The master found that Dominic's diagnoses included both developmental disabilities and mental illnesses, and that the doctors' testimony showed that Dominic "certainly does have some mental illness." The master also found that the State had presented clear and convincing evidence that Dominic continued to pose a serious risk of harm to others, and that there was a nexus between his mental illnesses — specifically "some intellectual impairments and impulse control" — and the risk of harm that he posed. And the master found that the State had met its burden of demonstrating that commitment to API was the least restrictive option available.

Dominic objected to the master's findings, arguing that he was not "mentally ill" as defined by statute and that the State had failed to prove by clear and convincing evidence that he was likely to cause harm to others. After the State replied, the superior court reviewed both sides' arguments and the recording of the hearing before the master. The superior court adopted the master's recommendations and

ordered Dominic committed to API for 30 days. It found that Dominic was mentally ill and was likely to cause harm to others. The superior court based its finding that Dominic was mentally ill on both doctors' testimony, specifically referring to the psychiatrist's additional diagnoses of impulse control disorder and pedophilic disorder.

The superior court order noted "a nexus between [Dominic's] mental illnesses (including intellectual impairments) and risk of harm to others." It concluded that he continued to pose a risk of harm "because he is impulsive and lacks insight" into "the severity of his conduct towards young girls." The court also listed Dominic's "poor problem solving, antisocial behavior, deviant sexual propensities, social skill deficits and lack of remorse" as factors that heightened the risk of harm that Dominic presented, and pointed to statements Dominic had made during evaluations and to staff at API as further indication of the risk. The court noted that Dominic required treatment for impulse control and that he was unlikely to take medication on his own. The court agreed with the master's findings and ordered Dominic's commitment.

Dominic appeals. He argues that the State did not prove that his symptoms were the result of mental illness rather than an intellectual or developmental disability.

## III.  STANDARD OF REVIEW

"We review the superior court's factual findings in involuntary commitment or medication proceedings for clear error."[8] We will disturb those findings only where there is a "definite and firm conviction that a mistake has been made."[9] We will not reweigh evidence if the record supports the trial court's finding.[10] "[W]hether

---

[8]     *In re Hospitalization of Naomi B.*, 435 P.3d 918, 923 (Alaska 2019).

[9]     *Id*. (quoting *In re Hospitalization of Jacob S.*, 384 P.3d 758, 764 (Alaska 2016)).

[10]     *In re Jacob S.*, 384 P.3d at 766.

those findings meet the statutory requirements for involuntary commitment or medication is a question of law to which we apply our independent judgment."[11]

## IV. DISCUSSION

### A. There Was Clear And Convincing Evidence That Dominic Was Mentally Ill.

#### 1. Statutory background

A court may commit a respondent to a treatment facility for up to 30 days "if it finds, by clear and convincing evidence, that the respondent is mentally ill and as a result is likely to cause harm to the respondent or others."[12] Evidence is clear and convincing if it produces "a firm belief or conviction about the existence of a fact to be proved."[13] We have characterized this standard as "evidence that is greater than a preponderance, but less than proof beyond a reasonable doubt."[14]

Alaska law also establishes a rebuttable presumption under which a criminal defendant charged with a felony and found incompetent to stand trial is presumed to be mentally ill and pose a risk of harm to self or others.[15] The defendant may rebut the presumption by clear and convincing evidence that the defendant is "not presently suffering from any mental illness that causes [them] to be dangerous to the public."[16]

---

[11] *In re Naomi B.*, 435 P.3d at 923-24.

[12] AS 47.30.735(c).

[13] *In re Hospitalization of Luciano G.*, 450 P.3d 1258, 1262-63 (Alaska 2019).

[14] *Id.* at 1263.

[15] AS 12.47.110(e).

[16] AS 12.47.090(c); *see Palmer v. State*, 379 P.3d 981, 988 (Alaska App. 2016).

### 2. Clear and convincing evidence of mental illness

After the superior court determined that Dominic was incompetent, the State initiated the involuntary commitment process by filing a petition for evaluation, which was granted based upon the statutory presumption. Following its evaluation of Dominic, API filed a petition for civil commitment. After a hearing on the petition, the superior court concluded that the expert testimony provided clear and convincing evidence that Dominic was mentally ill.[17] Dominic was committed and now appeals. Because we agree there was clear and convincing evidence that Dominic suffered from mental illness, we need not reach the question of whether Dominic successfully rebutted the statutory presumption.[18]

Dominic argues that the State failed to prove that he was mentally ill as defined by former AS 47.30.915(14).[19] That statute defines mental illness as:

> an organic, mental, or emotional impairment that has substantial adverse effects on an individual's ability to exercise conscious control of the individual's actions or ability to perceive reality or to reason or understand; intellectual disability, developmental disability, or both, epilepsy, drug addiction, and alcoholism do not per se constitute mental illness, although persons suffering from these conditions may also be suffering from mental illness[.]

Dominic asserts that all of his diagnoses are intellectual or developmental disabilities, which do not per se constitute mental illness.

---

[17] The superior court did not refer to or rely on the statutory presumption in making this finding.

[18] Dominic also raised a cursory substantive due process argument against applying the statutory presumption of mental illness in a footnote in his reply brief. This argument was waived for inadequate briefing. *See Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) ("Where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (internal brackets omitted)).

[19] The definition of mental illness (which has not changed) is now provided in AS 47.30.915(17).

Dominic questioned both experts about their diagnoses. In response the psychiatrist testified that at least one of the diagnoses, impulse control, was not a developmental disability, that "it can be a separate thing," but that it was "probably related in some sense" to one or more of his developmental disabilities. The court concluded that although Dominic "does have some developmental disabilities that may or may not qualify per se as mental illnesses . . . there are some other mental illnesses, particularly the impulse control disorder among some others . . . that are mental illnesses that could be treated."

Dominic argues that the evidence was not sufficient to prove by clear and convincing evidence that he was mentally ill. The State responds by pointing to the expert testimony that Dominic is mentally ill *and* suffers from a number of intellectual and developmental disabilities.

Mental illness in involuntary commitment proceedings is generally established by expert testimony from the mental health professional who treated and often diagnosed the respondent or confirmed the diagnosis.[20] The treating professional's testimony, especially when based on personal interactions with the respondent, is critical.[21]

---

[20] *See, e.g.*, *In re Hospitalization of Joan K.*, 273 P.3d 594, 599 (Alaska 2012); *In re Hospitalization of Jacob S.*, 384 P.3d 758, 762 (Alaska 2016); *In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1087 (Alaska 2011); *In re Hospitalization of Naomi B.*, 435 P.3d 918, 921-22 (Alaska 2019); *In re Hospitalization of Jonas H.*, 513 P.3d 1019, 1021 (Alaska 2022).

[21] *Compare In re Naomi B.*, 435 P.3d at 932 (upholding 30-day commitment order because treating physician's uncontroverted testimony was sufficient to support a finding of grave disability), *and In re Hospitalization of Marvin S.*, 2019 WL 2880963 at *6 n.20 (Alaska July 3, 2019) (rejecting respondent's argument that order for civil commitment was "improperly speculative" where court relied on testimony of doctor who had treated respondent directly), *with In re Hospitalization of Stephen O.*, 314 P.3d 1185, 1195 (Alaska 2013) (reversing 30-day commitment order because the court relied

At Dominic's 30-day commitment hearing, two mental health professionals testified about Dominic's diagnoses. Both of them had observed and interacted with him on multiple recent occasions. Their diagnoses were based on these interactions and Dominic's API records. They also took into account his recent behavior, including reports of Dominic's threats and inappropriate behavior with other patients and API staff treating him during his current stay.

Dominic suffers from a number of conditions that do not meet the statutory criteria for mental illness. But the psychiatrist diagnosed him with two additional conditions — impulse control disorder and pedophilic disorder. The psychiatrist clearly identified Dominic's impulse control disorder as distinct from his intellectual and developmental disabilities. When questioned by Dominic's attorney he testified that the impulse control disorder was "separate from developmental delay" and clarified that an underlying cognitive or developmental delay was not required to have an impulse control disorder.[22] He also testified that not all people with developmental delays have impulse control disorders. And he stated that unlike underlying developmental or cognitive delays, which are generally untreatable, impulse control can be treated separately.

Dominic argues that whether a condition can be treated does not determine whether it falls outside the exceptions to the statutory definition of mental illness. The statute does not include factors to guide such a determination. But the fact that one disorder can be treated while another cannot helps to distinguish them from one another and demonstrates the separation between the two.

---

on "partial and unclear" testimony based on uncorroborated hearsay accounts, which failed to support finding respondent gravely disabled by clear and convincing evidence).

[22] He was not cross-examined about Dominic's pedophilic disorder.

Dominic also argues that the psychiatrist was "equivocal" about whether his impulse control disorder was distinct from a developmental disability. He focuses on the psychiatrist's reluctance to agree that the diagnoses were "entirely separate" and suggests that the State failed to demonstrate that impulse control disorder was a condition "apart from, and more than," an intellectual or developmental disability, quoting our language in *E.P. v. Alaska Psychiatric Institute*.[23] But we did not require that addiction or intellectual disability be entirely separate from mental illness in *E.P.*[24] There we upheld a 30-day commitment order after observing that the respondent's brain damage was a condition "apart from, and more than," his drug addiction.[25] We explained that although E.P.'s brain damage was caused by his addiction to huffing gas, it was the brain damage itself that led to greatly impaired ability to exercise judgment, loss of perception of reality, and impaired ability to communicate, thus satisfying the definition of mental illness.[26]

In addition Dominic's argument would expand the statutory exclusions beyond the language of the statute. The statute is clear that its listed conditions "do not per se constitute mental illness."[27] As the State correctly observes, the expert testimony before the court demonstrated that Dominic is mentally ill *and* suffers from a number of intellectual and developmental disabilities.

"Per se" is a Latin term meaning "[o]f, in, or by itself; standing alone."[28] Replacing it with its English translation in the statute makes clear that the excluded conditions do not *by themselves, standing alone* constitute mental illness. Dominic's

---

[23] 205 P.3d 1101, 1109 (Alaska 2009).

[24] *See id.*

[25] *Id.*

[26] *Id.*

[27] Former AS 47.30.915(14) (2021).

[28] *Per se*, BLACK'S LAW DICTIONARY (11th ed. 2019).

treating psychiatrist testified that Dominic's underlying conditions did not in themselves account for his impulse control or pedophilic disorder.

The psychiatrist testified that Dominic's impulse control disorder and developmental disabilities were "probably related in some sense." But, as in *E.P.*, the relationship between his impulse control disorder and developmental disabilities does not mean they were the same. It suggests only that the presence of a developmental disorder could have contributed to the development of impulse control disorder. Taken as a whole, the psychiatrist's testimony supports finding Dominic's impulse control disorder was more than his developmental and intellectual disabilities, satisfying the statutory definition of mental illness.

The psychiatrist's expert testimony that, although they were related, Dominic's impulse control was not part of or the same as his other conditions satisfies the statutory command that his excluded underlying conditions per se not be the basis for a finding that he has a mental illness. The superior court did not clearly err by finding that Dominic suffered from a mental illness and, as a result, was likely to cause harm to others.

## V.    CONCLUSION

We AFFIRM the superior court's order.